309 So.2d 424

**Harry H. SMITH et al., etc.**

**v.**

**ALABAMA DRY DOCK & SHIPBUILDING CO., a corporation.**

**SC 926.**

Supreme Court of Alabama.

March 6, 1975.

645

Cunningham, Bounds & Byrd and Harry H. Smith, Mobile, for appellants.

C. A. L. Johnstone, Jr., and William H. Hardie, Jr., Mobile, for Alabama Dry Dock & Shipbuilding Co.

M. A. Marsal, Mobile, for appellees, D. J. Maloney and others.

ALMON, Justice.

Alabama Dry Dock & Shipbuilding Company, a corporation, filed a bill of complaint in equity seeking a declaratory judgment upholding a proposed retirement plan for the non-bargaining employees of the corporation.

Harry H. Smith, Gregory L. Smith and Frank M. Ladd, Jr., were made parties respondent, individually and as representatives of a class consisting of all holders of common stock of Alabama Dry Dock & Shipbuilding Company. The action of the trial court in ordering Smith, Smith and Ladd, without notice, to be party respondents in a representative capacity under Alabama Equity Rule 31 is claimed as error. Due to our holding in this case (that a justiciable controversy was not presented), it will not be necessary to address ourselves to that question.

While suit was in progress in the trial court, the Alabama Rules of Civil Procedure became operative. Thus, hereinafter we shall refer to appellee, Alabama Dry Dock & Shipbuilding Company, as plaintiff and appellants, Smith, Smith and Ladd, as defendants. Intervener D. J. Maloney, et al., individually and as representatives of a class consisting of employees of plaintiff eligible for participation in the proposed retirement plan, take the same position on appeal as the plaintiff.

The pertinent portions of the complaint are:

"1. The Company is a corporation duly organized and existing under the law of the State of Alabama with its principal place of business in Mobile County, Alabama.

"2. Each of Respondents Harry H. Smith, Gregory L. Smith and Frank M. Ladd, Jr., is over the age of twenty-one years, of sound mind and a resident of Mobile County, Alabama; and each of said Respondents is a holder of common stock of the Company, the said Harry H. Smith being the holder of 2,279 shares thereof, the said Gregory L. Smith being the holder of 328 shares thereof, and the said Frank M. Ladd, Jr., being the holder of 1,307 shares thereof, all according to the records of the Company.

"3. On November 21, 1972, the Board of Directors of the Company adopted a resolution by which a Retirement Plan for Non-Bargaining Employees of the Company, effective January 1, 1973, was adopted subject to approval of the stockholders of the Company at a special meeting of stockholders to be held on January 30, 1973 (Appendix I of Exhibit 'A'), and thereafter on the same date the Board of Directors of the Company adopted a second resolution providing in substance that subject to approval by the stockholders of the Company of the said proposed Retirement Plan and effective from and after close of business December 31, 1972, the Company shall discontinue the existing practice of paying premiums on life insurance for employees eligible for the proposed Retirement Plan for Non-Bargaining Employees after any such employee shall have retired as an employee of the Company and further that subject to approval of the proposed Retirement Plan the Company shall discontinue making any further contributions to an existing Profit Sharing Retirement Plan originally effective June 30, 1946, on behalf of any and all employees who shall have become eligible for membership in the said Retirement Plan for Non-Bargaining Employees (Appendix II, Exhibit 'A'). A notice of said special stockholders' meeting was duly given to the stockholders of the Company and there was sent with the said notice to each stockholder a proxy statement describing the proposed Retirement Plan for Non-Bargaining Employees of the Company, the reasons for the proposal to adopt the same, the estimated cost thereof to the Company and information about certain existing re-

tirement and compensation plans, together with other information required for such proxy statements and together with Appendix I and Appendix II thereto setting forth the resolutions of the Board of Directors referred to hereinabove, all of which is hereto attached, marked Exhibit 'A' and incorporated herein as fully as if set forth herein and the Company avers that the facts set forth in said Exhibit 'A' are true and correct.

"4. At the said special meeting of stockholders of the Company held on January 30, 1973, there were present in person or by proxy the holders of 122,988 shares of the common stock of the Company out of a total of 143,745 shares of stock outstanding and entitled to vote at said meeting thereby constituting a quorum for the transaction of business in accordance with the by-laws of the Company. At said meeting upon motion duly made and seconded for the approval of the said resolution of the Board of Directors adopting the Retirement Plan for Non-Bargaining Employees of the Company there were 110,105 shares of common stock of the Company voted in favor of the motion, and 12,883 shares of said stock voted against the motion so that the said motion was carried by more than a majority in accordance with the by-laws of the Company.

"5. The Directors of the Company received a letter from Respondent Harry H. Smith dated January 25, 1973, copy of which is hereto attached, marked Exhibit 'B' and hereby made a part hereof. At the said special meeting of stockholders of the Company on January 30, 1973, Respondent Gregory L. Smith, son of the said Harry H. Smith, spoke against the said motion citing substantially the same objections as those set forth in Exhibit 'B'. Respondent Frank M. Ladd, Jr., has otherwise indicated to a representative of the Company his opposition to the proposed Retirement Plan for Non-Bargaining Employees on substantially the same grounds as set forth in Exhibit 'B' hereto. At said special stockholders' meeting the said Harry H. Smith, Gregory L. Smith and Frank M. Ladd, Jr., voted or caused to be voted the said number of shares held by each of them against the said motion for approval of the adoption of the said Retirement Plan. The Company has not received information of any question or objection as to the legality of said Retirement Plan for Non-Bargaining Employees of the Company by any of the other stockholders of the Company who voted against the approval of said Retirement Plan, or by any other stockholders of the Company.

"6. On January 30, 1973, after the conclusion of the said special meeting of stockholders, the Company transmitted to newspapers of general circulation in Mobile, Alabama, a 'Press Release,' copy of which is hereto attached, marked Exhibit 'C' and made a part hereof and a copy of the same was on said date mailed by United States mail, postage prepaid, to each stockholder of record of the Company. The text of a resolution set forth in said Exhibit 'C' is a true and correct copy of a resolution duly adopted by the Board of Directors of the Company at a special meeting thereof on January 30, 1973, after the close of the said special meeting of stockholders of the Company on said date and the said resolution of the Board of Directors now remains in full force and effect without modification; and the text of said last mentioned resolution is incorporated herein as if set forth at length herein.

"7. The Company avers and contends that the adoption of said Retirement Plan for Non-Bargaining Employees of the Company as aforesaid is a legal corporate act regardless of the opposition thereto by the holders of a minority of the shares of stock of the Company but Respondents deny this and have indicated that the legality of any payments made by the Company in accordance with the provisions of said Retirement Plan will or may be contested by Respondents or some of them. The Company does not wish to submit the Company to risk of liability in lawsuits on such

subject and is withholding making payments on account of said Retirement Plan for Non-Bargaining Employees pending final adjudication by a court of competent jurisdiction that the participation of the Company in said Retirement Plan is legal and valid. Complainant avers that the said controversy is one upon which Complainant is entitled to have a declaratory judgment under the laws of the State of Alabama.

"8. There are approximately 680 persons or parties who are the holders of record of the outstanding shares of common stock of the Company who may have some interest in the outcome of this proceeding and of these there are approximately 37 persons who voted or caused their shares of stock to be voted against approval of the adoption of the said Retirement Plan at the said special meeting of stockholders of the Company, and each said class of stockholders is so numerous as to make it impracticable to bring them all before the Court as parties in the proceeding. Complainant avers that the Respondents named hereinabove will fairly insure the adequate representation of all of the stockholders of the Company who may make or support the contentions made by the Respondents as aforesaid; and that there are common questions of law and fact affecting the rights of all stockholders of the Company who may make such contentions and a common relief is hereby sought as to all of such persons."

The defendants' motion to dismiss challenged the complaint for failure to state a justiciable controversy. This motion was denied. The defendants then filed a motion for summary judgment with supporting affidavits. This motion was also denied. A cross motion for summary judgment with supporting affidavits and other papers filed in the cause was granted by the trial court. The effect of granting this motion was to hold valid and legal the plaintiff's proposed retirement plan. Motion for new trial was denied.

There must be a bona fide existing controversy of a justiciable character or the court is without jurisdiction. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545. Thus, the lack of a justiciable controversy may be raised either by a motion to dismiss, Rule 12 ARCP, or a motion for summary judgment, Rule 56 ARCP.

It is conceivable that in some cases a justiciable controversy would not appear from the pleadings at the time a motion to dismiss is filed and ruled upon; yet such a controversy might develop when the court has additional facts before it on summary judgment.

We think it advisable in this case to review the entire record as did the trial judge on summary judgment. To establish a precedent otherwise could in the future, as indicated in the preceding paragraph, work an injustice. This however should not be construed to mean, under the circumstances mentioned, that a trial court could be put in error for granting a motion to dismiss when the complaint failed to state a justiciable controversy. A somewhat analogous situation was pesented in McGruder v. B. & L. Construction Company, Inc., 293 Ala. 354, 303 So.2d 103. More to the point is the case of Crowell v. Baker Oil Tools, D.C., 49 F.Supp. 552, where the court said:

"The contention of the plaintiff that this motion for a summary judgment is a repetition of the defendants' motion to dismiss is not tenable. 1 Federal Rules Service 12c.21, commentary; Palmer v. Palmer, D.C., 31 F.Supp. 861; Liquid Carbonic Corp. v. Goodyear Tire & Rubber Co., D.C., 38 F.Supp. 520. See cases in Federal Rules Service under 12c."

See also United States Hoffman Machinery Corp. v. Richa, D.C., 78 F.Supp. 969.

We now turn to the jurisdictional question of whether a justiciable controversy was shown. Plaintiff's counsel

strongly contend in brief that the position taken by Harry H. Smith constitutes a justiciable controversy. They rely heavily on the following letter written by Mr. Smith:

"TO THE DIRECTORS
ALABAMA DRY DOCK AND SHIPBUILDING COMPANY
MOBILE, ALABAMA

"RECEIVED

Jan. 26, 1973

Alabama Dry Dock & Shipbuilding Co.
Executive Department
President

"Gentlemen:

"Because of my health, I am unable to attend the special meeting of the stockholders called for Tuesday, January 30, 1973, so I am writing you my objections to the proposed retirement plan.

"On page 4 of the notice of the stockholders meeting, I find the following statement: 'Based on data estimated as of January 1, 1973, the actuary has calculated normal contributions payable by the Company *for current service of Members* at 3,41% of payroll. * * * Contributions made payable by the Company *for prior service of Members* since March 1, 1962, approximate $98,866 ($4,125 for officers and employee-directors and $94,741 for other employees) per annum, such amounts being the level payments required to liquidate the estimated prior service cost of $1,518.921.'

"The Supreme Court of Alabama and all other courts as far as I have been able to find from a thorough search of the law hold that the directors do not have the power to make increased payments for prior services rendered and to do so constitutes a misappropriation of corporate funds which cannot be ratified except by every stockholder. In other words, if this resolution is passed, the directors will be personally liable for all the amounts paid for past services as stated in the notice, and the fact that every stockholder except the holder of one share approves will not relieve them of liability.

"Mr. Charlie Johnstone stated to me that he did not consider it a payment for past services, but his statement is contrary to the statement in the notice as quoted above and is, in my opinion, absurd. It definitely does constitute payment for prior services and therefore, is beyond the power of the directors or the stockholders if one stockholder objects. The directors who are responsible for this resolution are and should be held personally liable for all illegal payments.

"The fact that the notice expressly states that the payments are for prior service for Members since March 1, 1962, should be conclusive in any court and the liability of the directors clear.

"I am writing this letter because I feel you should know what liability you are assuming if you persist in the passage of this resolution.

"I have numerous other objections which I think are valid and which will be raised in contesting the legality of any payments made, but the foregoing reason is so clear that it should be sufficient."

Defendants dispute that the above letter creates a justiciable controversy but, nevertheless, counter with affidavits from which we quote in pertinent part:

". . . I further state that neither I, nor any member of my family holding stock in the corporation will file any proceedings to prevent the implementation of said plan, or to have the plan declared illegal, and I have advised the Directors of the Complainant Corporation of this. . . .

"/s/ Harry H. Smith"

". . . I have never at any time threatened any controversy or instituted any controversy with the company with regard to said proposed retirement plan; I never have and do not now have any intention of filing any proceedings to prevent the implementation of the said plan or to have it declared illegal, and I now affirmatively state that I will not undertake to institute any proceedings to prevent the implementation of said plan or to have it declared illegal. . . .

"/s/ Gregory L. Smith"

". . . I have never at any time threatened any controversy or instituted any action or controversy with the company with regard to its proposed retirement plan. I have never had, and do not now have any intention of filing any proceedings to prevent the implementation of the said plan, and I now affirmatively state that I will not undertake to institute any proceedings to prevent the implementation of said plan. . . .

"/s/ Frank M. Ladd, Jr."

■ A justiciable controversy does not exist merely because a stockholder disagrees with management or votes his stock contrary to management's position. While there may be some equivocation in Harry H. Smith's statements, nevertheless, they, so far as pertinent here, refer to matters which may or may not occur in the future. The complaint itself alleges that the "Retirement Plan will or may be contested by Respondents or some of them." Allegations which merely show that the plaintiff anticipates such a controversy may arise are not sufficient to invite judicial declaration of rights. Saenger Theatres Corp. v. McDermott et al., 237 Ala. 489, 187 So. 460; Theater Company v. Manning et al., 236 Ala. 670, 185 So. 171; Jefferson County v. Johnson, 232 Ala. 406, 168 So. 450.

■ It is also pertinent we think that the retirement plan is not in effect. The board of directors of plaintiff passed a resolution stating that the plan would not be put into operation until court approval was obtained. It has long been the law of this State that courts will not decide moot, abstract or hypothetical questions or render purely advisory opinions. Many cases to this effect are collected in the Alabama Digest under Declaratory Judgment, ☞ 65 and 66. To rule otherwise we think would cause a deluge of court litigation concerning the operation and future action of private corporations.

The plaintiff has relied primarily on the following cases: Klein v. Jefferson County Building and Loan Ass'n, 239 Ala. 460, 195 So. 593; Fore v. Alabama State Bridge Corporation, 242 Ala. 455, 6 So.2d 508; Scott v. Alabama State Bridge Corporation, 233 Ala. 12, 169 So. 273; Lang v. City of Mobile, 239 Ala. 331, 195 So. 248; Alabama-Tennessee Natural Gas Co. v. City of Huntsville, 275 Ala. 184, 153 So.2d 619.

■ While in some instances these cases are persuasive, we nevertheless are of the opinion that they fall short of sustaining its position. These cases involve the construction or constitutionality of statutes or involve matters of substantial public interest. They stand for the proposition that controversy touching the legality of acts of public officials or public agencies challenged by parties whose interests are adversely affected is one of the favored

fields for declaratory judgment. While we regard the holdings of these cases as sound, we do not think they are applicable to private matters not involving public interest. Here, we are dealing with a proposed future act of a private corporation.

Since the judgment of the trial court was void because of the lack of a justiciable controversy between the parties and since a void judgment will not support an appeal, it follows that the appeal is dismissed. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545; State ex rel. Baxley v. Johnson, 293 Ala. 69, 300 So.2d 106.

In view of our decision, mandamus is appropriate, although perhaps unnecessary. Wood v. Casualty Reciprocal Exchange, 291 Ala. 243, 279 So.2d 506; Light v. Harrison, 289 Ala. 1, 265 So.2d 437. The defendant's petition for writ of mandamus is granted and the trial court is directed to vacate its May 30, 1974, summary judgment.

Appeal dismissed; writ granted.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.