Rel: March 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

———————————————

### CL-2024-0588

———————————————

Alabama Medical Cannabis Commission

v.

Alabama Always, LLC

———————————————

### CL-2024-0616

———————————————

Rex Vaughn, Sam Blakemore, Dwight Gamble, Dr. Jimmie Harvey, James Harwell, Taylor Hatchett, Dr. Eric Jensen, Dr. Angela Martin, Charles Price, Dr. William Saliski, Loree Skelton, and Dr. Jerzy Szafarski, in their official capacities as members of the Alabama Medical Cannabis Commission

v.

Alabama Always, LLC

Appeals from Montgomery Circuit Court
(CV-24-900524)

PER CURIAM.

The Alabama Medical Cannabis Commission ("AMCC") and Rex Vaughn, Sam Blakemore, Dwight Gamble, Dr. Jimmie Harvey, James Harwell, Taylor Hatchett, Dr. Eric Jensen, Dr. Angela Martin, Charles Price, Dr. William Saliski, Loree Skelton, and Dr. Jerzy Szafarski, in their official capacities as members of the AMCC ("the commissioners"), appeal from a temporary restraining order ("the TRO") entered by the Montgomery Circuit Court ("the circuit court") in favor of Alabama Always, LLC. We dismiss the appeals as arising from a void judgment.

Background

The AMCC has three times denied the application of Alabama Always for an integrated-facility license to produce and sell medical cannabis under the Darren Wesley "Ato" Hall Compassion Act ("the Act"), Ala. Code 1975, § 20-2A-1 et seq.; the last denial occurred on December 12, 2023, when the AMCC awarded the five available licenses to other applicants. After the first two denials, Alabama Always commenced civil actions against the AMCC challenging its licensing procedures. Following the December 12, 2023, denial, Alabama Always filed a request with the AMCC for a "public investigative hearing," see Ala. Code 1975,

2

§ 20-2A-56(e), and filed a notice of appeal with the AMCC. Additionally, as it had done before, Alabama Always pursued relief in the circuit court.

After obtaining a temporary restraining order on January 3, 2024, to prevent the AMCC from continuing the integrated-facility-licensing process, Alabama Always commenced several civil actions against the AMCC. On April 1, 2024, the circuit court, on the motion of Alabama Always, dismissed all pending actions without prejudice. On April 3, 2024, Alabama Always commenced its sixth civil action arising out of the integrated-facility-licensing process.[1] In its complaint, Alabama Always included, among other things, a petition for judicial review of the December 12, 2023, decision to deny its integrated-facility-license application ("the denial"), and its request for a judgment declaring that Ala. Admin. Code (AMCC), former r. 538-X-3-.18, was invalid because it violates the Alabama Administrative Procedure Act ("the AAPA"), Ala. Code 1975, § 41-22-1 et seq.

---

[1]See Ex parte Alabama Med. Cannabis Comm'n, [Ms. CL-2024-0073, June 21, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024), and Ex parte Alabama Med. Cannabis Comm'n, [Ms. CL-2024-0292, June 21, 2024] ___ So. 3d ___, ___ n.3 (Ala. Civ. App. 2024), for a fuller history of the litigation between the parties.

Along with the complaint, Alabama Always filed a motion for another temporary restraining order. The AMCC and the commissioners moved to dismiss the case and to deny the request for the temporary restraining order. After hearing oral argument on the motions, on July 11, 2024, the circuit court denied the motion to dismiss and entered a temporary restraining order ("the TRO").

In the TRO, the circuit court found that Alabama Always had a reasonable chance of success on the merits of its claim that the AMCC had failed to comply with its scoring, averaging, and ranking rules, see Ala. Admin. Code (AMCC), rr. 538-X-3-.10 and 538-X-3-.11, when denying Alabama Always a license and its claim that

> "the [AMCC]'s anticipated investigative hearings (purportedly to be conducted under Ala. Code [1975,] § 20-2A-56(e)) violate the [AAPA] because (a) all licensing grants or denials are 'contested cases' under Ala. Code [1975,] § 41-22-19(a), and (b) the [AMCC]'s process for conducting investigative hearings, as Alabama Always contends, does not comply with the AAPA's contested case requirements, Ala. Code [1975,] §41-22-12 through -19."

As part of the second claim, Alabama Always had alleged that the AMCC could not compel license awardees to participate in public-investigative hearings as would be required in a contested case under the AAPA and that former r. 538-X-3-.18, provided no means for denied applicants to

4

intervene in the licensing process relating to awarded applicants as would be allowed by Ala. Code 1975, § 41-22-14, a part of the contested-case provisions of the AAPA.

The circuit court further determined that Alabama Always was threatened with immediate and irreparable injury because the public-investigative-hearing process was "likely insufficient to provide Alabama Always with a meaningful avenue for review of the [AMCC]'s adverse licensing decision." After concluding that an administrative stay that had been imposed by the AMCC on the issuance of its integrated-facility licenses was not an adequate remedy, the circuit court weighed the competing interests of the parties and the public and concluded that the balance of the equities favored awarding Alabama Always the TRO. The circuit court enjoined the AMCC and its commissioners from "taking any action in furtherance of the December 12, 2023[,] awards of licenses in the Integrated Facility category, including without limitation the issuance of any licenses."

The AMCC and the commissioners timely appealed the TRO to this court. See Rule 4(a)(1)(A), Ala. R. App. P. This court has appellate jurisdiction. See Ala. Code 1975, § 12-3-10 (giving the court of civil

5

appeals jurisdiction over "all appeals from administrative agencies"), and

Kimberly-Clark Corp. v. Eagerton, 433 So. 2d 452, 454 (Ala. 1983) (holding that the court of civil appeals has "exclusive jurisdiction of all appeals involving the enforcement of, or challenging, the rules, regulations, orders, actions, or decisions of administrative agencies").

Issues

The AMCC and the commissioners have raised various arguments for reversal of the TRO that may be grouped into two categories. First, they argue that the circuit court lacked subject-matter jurisdiction to enter the TRO. Second, they contend that the circuit court abused its discretion in entering the TRO. We find the first argument dispositive of these appeals, so we do not address the second argument.

Scope and Standard of Review

Ordinarily, this court does not have jurisdiction over interlocutory appeals, see Momar, Inc. v. Schneider, 823 So. 2d 701, 703 (Ala. Civ. App. 2001), but Rule 4(a)(1)(A), Ala. R. App. P., allows this court to review an interlocutory order granting an injunction in a case within our exclusive appellate jurisdiction. See, e.g., C.E. v. M.G., 169 So. 3d 1061, 1065 (Ala. Civ. App. 2015). In these unusual appellate proceedings, review is

6

confined solely to the injunctive order appealed. See Lynne v. Ralph, 201 Ala. 535, 535, 78 So. 889, 889 (1918). Thus, this court is not authorized to review a contemporaneous interlocutory order denying a motion to dismiss, see Midwest Ent. Ventures, Inc. v. Town of Clarksville, 158 N.E.3d 787, 791 (Ind. Ct. App. 2020), except insofar as the motion to dismiss asserts that the trial court lacks subject-matter jurisdiction, which would affect the validity of the injunction. See Retta v. Mekonen, 338 S.W.3d 72, 76 (Tex. App. 2011); Cournoyer v. Montana, 512 N.W.2d 479, 479 (S.D. 1994).

The TRO at issue contains both a ruling granting Alabama Always injunctive relief and a ruling denying the motion to dismiss filed by the AMCC and the commissioners. We do not directly review the ruling on the motion to dismiss, but we will consider whether the circuit court had subject-matter jurisdiction over the claims supporting its decision to enter the TRO. As to that issue, "[w]e review de novo whether the trial court had subject-matter jurisdiction." Solomon v. Liberty Nat'l Life Ins. Co., 953 So. 2d 1211, 1218 (Ala. 2006).

Analysis

"As a threshold matter, injunctive relief is a remedy, not a separate cause of action."  Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Regional Transp. Comm'n of Washoe Cnty., 138 Nev. 741, 745, 522 P.3d 453, 457 (Ct. App. 2022).  To obtain injunctive relief, a party must prove a viable cause of action warranting that extraordinary relief.  See Foothills Park & Recreation Dist. v. Board of Cnty. Comm'rs of Jefferson Cnty., 555 P.3d 644, 656 (Colo. 2024).  If a court lacks subject-matter jurisdiction over the claims upon which a request for an injunction is based, it has no power to issue the injunction, and the injunction is void.  See Ex parte Alabama Med. Cannabis Comm'n, [Ms. CL-2024-0463, Oct. 4, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024) (holding that a January 3, 2024, temporary restraining order entered in a civil action against the AMCC, which action was barred by the doctrine of sovereign immunity, was void for lack of subject-matter jurisdiction).  In the TRO, the circuit court identified two claims that justified injunctive relief.  In determining the subject-matter jurisdiction of the circuit court to issue the TRO, we analyze each of those claims in turn.

I.

The First Claim

In the first claim, Alabama Always asserted that the AMCC had failed to follow its own regulations when making its decision to deny Alabama Always an integrated-facility license. A claim that an administrative agency failed to follow its own regulations in making a licensing decision may be heard only in an appeal of the licensing decision. See generally City of Graysville v. Glenn, 46 So. 3d 925, 930 (Ala. 2010) (holding that municipality complaining that the Alabama Department of Environmental Management had issued a landfill permit in violation of its own regulations could be reviewed only by appeal and not by a declaratory-judgment action). Section 41-22-20(k)(3), Ala. Code 1975, a part of the AAPA, authorizes a circuit court to reverse a decision of an administrative agency if that decision is "[i]n violation of any pertinent agency rule." Thus, we consider the claim that the AMCC failed to comply with rr. 538-x-3-.10 and 538-X-3-.11 when making its

integrated-facility-licensing decisions to be subsumed in Alabama Always's appeal and its petition for judicial review of the denial.[2]

When a circuit court has obtained jurisdiction over an administrative appeal, it is authorized, pursuant to § 41-22-20(k), to award injunctive relief to remedy an administrative error. See Ex parte Alabama Dep't of Mental Health, 207 So. 3d 743, 755 (Ala. Civ. App. 2016). To invoke the subject-matter jurisdiction of the circuit court to hear its appeal and its petition for judicial review, Alabama Always would first have had to prove a right to appeal the denial. See generally Hallman v. City of Northport, 386 So. 2d 756, 757 (Ala. Civ. App. 1980) ("The right to appeal is purely statutory, and an appeal taken without statutory authority must be dismissed for want of jurisdiction."). In this case, the right to appeal the denial is governed by Ala. Code 1975, § 41-22-20(a), which provides:

> "A person who has exhausted all administrative remedies available within the agency, other than rehearing, and who is aggrieved by a final decision in a contested case is entitled to

---

[2]In another discrete claim, Alabama Always alleged that the AMCC had failed to follow the scoring, averaging, and ranking rules based on an invalid emergency rule, Ala. Admin. Code (AMCC), r. 530-X-3-.20ER, and Alabama Always sought a judgment declaring that the emergency rule was invalid; however, the circuit court did not reference that claim in the TRO, so we do not address it herein.

judicial review under this chapter. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

Although the contested-case provisions of the AAPA apply to the denial, see Ala. Code 1975, § 41-22-19(a) ("The provisions of this chapter concerning contested cases shall apply to the grant, denial, revocation, suspension, or renewal of a license."),[3] we conclude that Alabama Always did not have a right to appeal the denial because the denial was not a final decision, and review of a final agency decision of the AMCC regarding Alabama Always's integrated-facility-license application would provide an adequate remedy.

Under the contested-case provisions of the AAPA, a final decision denying a license application follows an evidentiary hearing before a hearing officer, and the decision must be formalized in a written order containing findings of fact and conclusions of law approved by a majority of the decision-making members of the licensing agency. See Ala. Code

---

[3]The parties agree that the contested-case provisions of the AAPA apply after the denial of a license, but they dispute whether those provisions apply earlier in the licensing process. Because these appeals concern only the post-denial process, we do not need to resolve that dispute.

1975, § 41-22-15 and 41-22-16. The AMCC fulfilled none of those formal requirements when denying Alabama Always's integrated-facility-license application, so the denial was not a final decision that could be appealed pursuant to the first sentence of § 41-22-20. See Huntsville Hous. Auth. v. State of Alabama Licensing Bd. for Gen. Contractors, 179 So. 3d 146, 152 (Ala. Civ. App. 2014) (holding that circuit court lacked jurisdiction over appeal from administrative decision that was not final because it had not complied with § 41-22-15 and 41-22-16).[4]

If the AMCC and the commissioners erred in any respect in the licensing process in failing to apply the scoring, averaging, and ranking rules, that error can be rectified in an appeal of the final decision in the contested case. Upon review of a final agency decision, a circuit court is empowered to reverse the decision not only if it is "[i]n violation of any pertinent agency rule," § 41-22-20(k)(3), but also if it is "[m]ade upon unlawful procedure," § 41-22-20(k)(4), or "[c]learly erroneous in view of

___

[4]For that reason, we need not consider whether Alabama Always was required to exhaust all administrative remedies to invoke the jurisdiction of the circuit court. See Southeast Cannabis Co., LLC v. Alabama Med. Cannabis Comm'n, [Ms. CL-2024-0300, Dec. 20, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024) (noting that exhaustion of administrative remedies does not apply to nonfinal agency decisions).

the reliable, probative, and substantial evidence on the whole record," §41-22-20(k)(6). Alabama Always maintains, however, that appeal following a final decision on its license application is not an adequate remedy because, it says, it would suffer an irreparable injury if the AMCC issues the five available integrated-facility licenses while its appeal of a final decision is pending.

We considered that point in Southeast Cannabis Co., LLC v. Alabama Medical Cannabis Comm'n, ___ So. 3d at ___, stating:

> "Presently, the five integrated-facility licenses have been awarded, but not issued; however, by the time the circuit court obtains jurisdiction to review a final decision, it is possible that no integrated-facility licenses will be available. The remedy of judicial review following a final decision would be inadequate if there is 'some suggestion that the administrative ruling, if incorrect, could not be remedied so as to cause irreparable harm.' Schlachter v. Georgia State Bd. of Exam'rs of Psychs., 215 Ga. App. 171, 171, 450 S.E.2d 242, 244 (1994)."

(Footnotes omitted.) In this case, however, the record shows that the AMCC has imposed an administrative stay to prevent the issuance of any integrated-facility licenses until it makes its final licensing decisions, and it has confirmed in its minutes that it will not amend or revise the stay while the integrated-facility licenses remain under administrative review. After administrative review is complete, and if Alabama Always

13

appeals the final decision, the circuit court would have the power to issue a stay to prevent the issuance of the licenses. See Ala. Code 1975, § 41-22-20(c). Any such stays would prevent Alabama Always from being irreparably harmed.

On December 28, 2023, the commissioners voted not to impose an administrative stay and to proceed with steps toward completing the licensing process and issuing the integrated-facility licenses that had been awarded.[5] On April 11, 2024, the commissioners voted to impose the administrative stay that is currently in place. In the TRO, the circuit court considered the stay to be an inadequate remedy. Alabama Always argues that the commissioners could change their position, as they did before, and lift the stay, allowing the AMCC to issue the integrated-facility licenses, which, Alabama Always says, would expose it to irreparable harm. We believe that possibility does not render the review of a final decision to be an inadequate remedy.

---

[5]The AMCC draws a distinction between a "license awarded" and a "license issued." An applicant who has been awarded a license becomes a licensee with the permission to conduct medical-cannabis activities only upon issuance of the license. See Ala. Admin. Code (AMCC), r. 538-X-3.02(11) and (12).

In <u>Richards v. Iowa State Commerce Commission</u>, 270 N.W.2d 616 (Iowa 1978), property owners objecting to the issuance of a franchise that would authorize a power company to obtain their property through eminent domain to construct an electric-transmission line filed an appeal from an intermediate decision of the administrative agency considering the petition for the franchise. Like in Alabama, the Iowa Administrative Procedure Act requires a party seeking review of an interlocutory administrative decision to prove that "review of the final agency action would not provide an adequate remedy." Iowa Code § 17A.19.1. (2017). The property owners argued that an appeal from a final decision would not be an adequate remedy because the agency could issue the franchise before final judicial review could be completed, which, they said, would render their objections moot. The Iowa Supreme Court rejected the property owners' argument, stating:

> "The legislature realized however that immediate implementation of final agency action would render some questions moot, thereby denying effective judicial review. To prevent unfairness the legislature provided that when judicial review of final agency action is sought, the district court can stay implementation of agency action in appropriate circumstances. § 17A.19(5).
>
> "The statutory procedure for stay does not guarantee a grant of stay, and the possibility exists in a given case that

15

one or more issues could be mooted before judicial review is completed. But this possibility exists as to all parties similarly situated, and a party seeking to meet the second requirement for intermediate judicial review must show more than the possibility that a district court will not stay the final agency action. The second requirement would be practically meaningless if it only required an assertion that a judge might not stay final agency action; every party seeking intermediate review could satisfy the requirement."

270 N.W.2d at 620.

In this case, the AMCC would have to lift the administrative stay, and the circuit court would have to deny a judicial stay, for the awarded integrated-facility licenses to be issued. That is possible, but, as Richards illustrates, that possibility does not render an appeal from a final decision an inadequate remedy. Thus, Alabama Always did not have a right to appeal the denial pursuant to the second sentence of § 41-22-20, and the circuit court did not have subject-matter jurisdiction to issue the TRO based on the first claim.[6]

---

[6]Based on our conclusion, we pretermit discussion of the other jurisdictional arguments asserted by the AMCC and the commissioners relating to the first claim.

16

II.

The Second Claim

Section 20-2A-56(e), Ala. Code 1975, provides, in pertinent part: "After denial of a license, the commission, upon request, shall provide a public investigative hearing at which the applicant is given the opportunity to present testimony and evidence to establish its suitability for a license." Consistent with § 41-22-19(a), which provides that the contested-case provisions of the AAPA shall apply to the denial of a license, see Ex parte Alabama Pub. Charter Sch. Comm'n, 256 So. 3d 98, 100 (Ala. Civ. App. 2018), Ala. Code 1975, § 20-2A-57(c), provides, in pertinent part, that the AMCC "shall comply with the hearing procedures of the [AAPA] when denying ... a license." The hearing procedures of the AAPA are contained within the contested-case provisions of the AAPA, Ala. Code 1975, § 41-22-12 et seq. The contested-case provisions provide for notice and an opportunity for a public evidentiary hearing of record before a hearing officer with the authority to issue subpoenas and discovery orders in which the witnesses are subject to cross-examination. See Ala. Code 1975, § 41-22-12 and § 41-22-13.

> "In contested cases, upon timely application, any person shall be permitted to intervene when a statute confers an

> unconditional right to intervene, or when the applicant has an individual interest in the outcome of the case as distinguished from a public interest and the representation of the interest of the applicant is inadequate."

§ 41-22-14.  Upon conclusion of the hearing, the administrative agency renders a final decision supported by findings of fact based on the evidence in the record, see § 41-22-12(i), § 41-22-14, and § 41-22-16, subject to an application for a rehearing.  Ala. Code 1975, § 41-22-17.  Decisions in contested cases may be appealed to the circuit court pursuant to § 41-22-20.

This brief discussion shows that, as a matter of statutory law, the contested-case provisions of the AAPA apply when an administrative agency reviews the denial of a license.  Nevertheless, Alabama Always claims that there is a bona fide controversy between the parties regarding whether the AMCC will apply the contested-case provisions during the public-investigative hearing because former r. 538-X-3-.18 does not specifically require the AMCC to do so.

At the time Alabama Always requested a public-investigative hearing, former r. 538-X-3-.18 provided, in pertinent part:

> "In accordance with § 20-2A-56(e), Code of Ala. 1975, (as amended), any Applicant who has been denied a license by the Commission may seek an investigative hearing before the

18

> Commission to seek reconsideration of said denial. ... The decision of the Commission on such hearing is considered a final action; thereafter, a disappointed Applicant may appeal, as provided in the Act (§ 20-2A-57(f), Code of Ala. 1975, (as amended))."[7]

As Alabama Always contended in its complaint, former r. 538-X-3-.18 does not expressly incorporate the contested-case provisions of the AAPA or otherwise describe in detail the specific procedures to be utilized in a public-investigative hearing. That does not mean, however, that there are no preexisting rules governing the procedure. See Mallinckrodt US LLC v. Department of Env't Prot., 90 A.3d 428, 436 (Me. 2014) (holding that, when governing statute provides that hearing procedure shall be controlled by administrative procedure act, the "argument that no preexisting rules governed the proceeding therefore fails"). Pursuant to the terms of the Act alone, the contested-case provisions of the AAPA clearly apply in a public-investigative hearing, and the AMCC could not adopt a rule providing otherwise. See Ex parte State Dep't of Hum. Res., 548 So. 2d 176, 178 (Ala. 1988) (holding, without specific legislative

---

[7]The AMCC has since amended former r. 538-X-3-.18, but the amendment was effective February 12, 2024, and does not apply to requests for public-investigative hearings made before that date. See r. 538-X-3-.18(k).

19

authority, that administrative agency could not adopt a rule altering the appellate procedure in contested cases as established in the AAPA).

Alabama Always maintains that former r. 538-X-3-.18 is invalid because it does not contain sufficiently detailed procedural rules incorporating the contested-case provisions in alleged violation of § 41-22-4(a)(2), which provides, in pertinent part:

> "In addition to the other rulemaking requirements imposed by law, each agency shall:
>
> "….
>
> "(2) Adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available, including a description of all forms and instructions used by the agency …."

Pursuant to Ala. Code 1975, § 41-22-10, the circuit court may determine the validity of a rule in an action for a declaratory judgment and stay the enforcement of that rule by injunctive relief, but only "if the court finds that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff."

In this case, Alabama Always contends that, based on its silence as to the procedure to be employed in a public-investigative hearing, former

r. 538-X-3-.18 threatens to interfere with its right to a hearing governed by the contested-case provisions regarding the denial of its integrated-facility-license application. However, even assuming the invalidity of the rule, which we do not expressly decide, Alabama Always retains the right to a contested-case hearing based on § 20-2A-57(c) alone. In <u>Keith v. LeFleur</u>, [Ms. 2200821, Sept. 8, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023), we held that a group of landowners could maintain a § 41-22-10 action to challenge the validity of a racial-discrimination-grievance procedure that had been informally adopted by the Alabama Department of Environmental Management in violation of the rulemaking provisions of the AAPA. We concluded that the grievance procedure threatened the landowners' procedural right to administrative relief from racial discrimination as established by 40 C.F.R. § 7.90(a) because, if the grievance procedure was invalid, any relief the Department of Environmental Management received pursuant to the procedure would not be enforceable. In <u>Keith</u>, the landowners did not have any other method of pursuing relief. Unlike in <u>Keith</u>, the invalidity of former r. 538-X-3-.18 would not deprive Alabama Always of its statutory right to a contested-case hearing to obtain enforceable relief.

21

Although the circuit court has subject-matter jurisdiction over a §

41-22-10 claim, see Ex parte Vaughn, [Ms. CL-2024-0737, Nov. 15, 2024]

___ So. 3d ___ (Ala. Civ. App. 2024), the AMCC is immune from suit under

§ 41-22-10, so the TRO is void insofar as it purports to enjoin or restrain

the AMCC pursuant to that statute.    See Ex parte Alabama Med.

Cannabis Comm'n, [Ms. CL-2024-0463, Oct. 4, 2024] ___ So. 3d ___, ___

(Ala. Civ. App. 2024).   The commissioners may be made defendants to a

§ 41-22-10 claim, but that claim still must be ripe for judicial review.  See

Oyarzo v. Maryland Dep't of Health & Mental Hygiene, 187 Md. App.

264, 273, 978 A.2d 804, 809 (2009).    Ordinarily, declaratory and

injunctive relief is not available "against administrative determinations

unless those remedies arise in a context ripe for judicial determination."

Evers v. Board of Med. Exam'rs, 516 So. 2d 650, 656 (Ala. Civ. App. 1987).

> "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way ....'"

National Park Hosp. Ass'n v. Department of the Interior, 538 U.S. 803,

807 (2003) (quoting Abbott Lab'ys v. Gardner, 387 U.S. 136, 148-49

(1967)); see also Ex parte Riley, 11 So. 3d 801, 806-07 (Ala. 2008). Our supreme court has recognized that applying the doctrine of ripeness to a declaratory-judgment proceeding is challenging because the purpose of the action is to avoid harm before it is inflicted. See Ex parte Marshall, 323 So. 3d 1188, 1199 (Ala. 2020). "Nonetheless, ripeness is still required for a court to entertain a request for a declaratory judgment." Id. In a declaratory-judgment action, a court cannot decide an anticipated controversy, resolve abstract questions, or give advisory opinions. Id.

Although framed as an action challenging the validity of former r. 538-X-3-.18, the underlying controversy asserted by Alabama Always in its complaint concerns whether the contested-case provisions of the AAPA will be applied in the anticipated public-investigative hearing concerning the denial of its integrated-facility-license application. Alabama Always did not plead that it had requested the AMCC to apply the contested-case provisions of the AAPA in that hearing. Likewise, Alabama Always complains that it may not be able to challenge the award of integrated-facility licenses to other applicants, but it did not allege in the complaint that it had ever raised a challenge to those awards in the administrative process or that it had requested a hearing pursuant

23

to the contested-case provisions of the AAPA to challenge those awards. Section 20-2A-20(p), Ala. Code 1975, provides that the AAPA applies to the AMCC, and § 20-2A-57(e) specifically authorizes the AMCC to conduct contested-case hearings pursuant to the AAPA. Alabama Always did not assert in the complaint that it had invoked these statutes in the administrative proceedings before the AMCC. Alabama Always also presented no evidence to the circuit court indicating that the AMCC had threatened to proceed with the public-investigative hearing without applying the contested-case provisions of the AAPA. Although statements of counsel are not evidence, we note that, in their motion to dismiss, in their response in opposition to the application for the TRO, in the oral argument before the circuit court on the application, and at oral argument on appeal, counsel for the AMCC consistently stated that the AMCC intends to apply the contested-case provisions in the requested public-investigative process. The burden was on Alabama Always to allege a bona fide existing controversy of a justiciable character showing otherwise, or the circuit court was without jurisdiction. Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644, 309 So. 2d 424 (1975). "Allegations which merely show that the plaintiff anticipates

such a controversy may arise are not sufficient to invite judicial declaration of rights." 293 Ala. at 651, 309 So. 2d at 429.

In DeBuys v. Jefferson County, 511 So. 2d 196 (Ala. Civ. App. 1987), two landowners commenced a civil action against Jefferson County after their applications for sewer-impact-connection permits were denied. On appeal, the landowners argued that their due-process rights had been denied by the failure of the Jefferson County Sewer Moratorium Committee to promulgate ascertainable standards governing permit decisions. This court rejected that contention, stating:

> "Once again, the fact that the plaintiffs refused to go before the Committee to present their permit requests causes their argument to fail. The plaintiffs have no right to attack the standards used by the Committee in making determinations on permit applications when they refused to give the Committee the opportunity to apply those standards to their requests."

511 So. 2d at 199. Although this court was applying the doctrine of exhaustion of administrative remedies, its reasoning applies equally to the doctrine of ripeness. See Dawson v. Cole, 485 So. 2d 1164, 1167 (Ala. Civ. App. 1986) (noting the close relationship between exhaustion of remedies, finality, and ripeness).

25

In this case, immediately after requesting a public-investigative hearing, Alabama Always obtained injunctive relief preventing the AMCC from proceeding with a public-investigative hearing, and the TRO continues to obstruct that hearing.[8]  Unless and until the AMCC and the commissioners are allowed to proceed, it remains speculative as to whether, based on former r. 538-X-3-.18 or otherwise, they will impair or threaten to impair the procedural right of Alabama Always to a contested-case hearing.

At present, the claim for declaratory and injunctive relief based on the alleged invalidity of former r. 538-X-3-.18 is not ripe for judicial determination.  If a controversy between a citizen and an administrative agency is not ripe for judicial review, it is not a justiciable case within the subject-matter jurisdiction of a court.  See Baldwin Cnty. v. Palmtree Penthouses, Ltd., 831 So. 2d 603 (Ala. 2002).  Thus, the circuit court did

---

[8]The parties agree that the TRO prevents the AMCC and the commissioners from proceeding with the public-investigative hearing.

26

not have subject-matter jurisdiction over the second claim, and it could not have issued the TRO based on that claim.[9]

Conclusion

Because the circuit court lacked subject-matter jurisdiction over the first and second claims, the TRO issued based on those claims is void.[10] See Ex parte Vaughn, ___ So. 3d at ___. A void judgment will not support an appeal. See Miller v. Riley, 37 So. 3d 768, 772 (Ala. 2009). An appellate court must dismiss an attempted appeal from a void judgment. Hunt Transition & Inaugural Fund, Inc. v. Grenier, 782 So. 2d 270, 274 (Ala. 2000). We therefore dismiss these appeals, albeit with instructions to the circuit court to vacate the TRO. See Vann v. Cook, 989 So. 2d 556, 559-60 (Ala. Civ. App. 2008).

CL-2024-0588 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2024-0616 -- APPEAL DISMISSED WITH INSTRUCTIONS.

All the judges concur.

---

[9]Based on our conclusion, we pretermit discussion of the other jurisdictional arguments asserted by the AMCC and the commissioners relating to the second claim.

[10]Based on our disposition of these appeals, we pretermit consideration of the other arguments asserted by the AMCC and the commissioners for reversal of the TRO.